### FERNALD v. ONEIDA NAT. CHUCK CO.

(Circuit Court, N. D. New York. February 22, 1909.)

**1. PATENTS (§ 35\*)—PATENTABILITY—EVIDENCE OF INVENTION.**
While the commercial success of a patented device may be important on the question of invention and may determine such question in a close case, it is not alone sufficient evidence of mental conception, amounting to invention, to sustain a patent.

[Ed. Note.—For other cases, see Patents, Cent. Dig. § 39; Dec. Dig. § 35.\*]

**2. PATENTS (§ 328\*)—PATENTABILITY—INVENTION—THILL-COUPLING.**
The Fernald patent No. 747,874, for an improvement in thill-couplings, construed, and *held* void for lack of invention in view of the prior art.

[Ed. Note.—For other cases, see Patents, Dec. Dig. § 328.\*]

In Equity. Demurrer to bill to restrain alleged infringement of letters patent and for an accounting.

Hugh C. Lord and George E. Rendell, for complainant.
Robinson, Martin & Jones, for defendant.

\*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

RAY, District Judge. The bill of complaint, in the usual form, charges infringement of United States letters patent for improvement on thill-couplings, No. 747,874, dated December 22, 1903, and granted to George H. Fernald, and is accompanied by the said letters patent, and also makes profert of the alleged infringing device which is filed with the bill. The defendant demurs on the grounds that the bill, with letters patent, shows on its face that the patent is void for want of patentable invention; that it appears from the bill that the alleged infringing device is not an infringement of the patent set forth; and that it appears from the bill that defendant has not made and sold thill-couplings formed in the manner set forth and claimed in the letters patent set forth in the bill and alleged to have been infringed.

The patent is for a mere improvement, and in its specifications states the prior art, and specifies the particular improvement thereon wherein the invention alleged to be disclosed by the patent is claimed to reside. As the alleged infringing device is filed with the bill, and is simple and easily understood, the question of infringement is easily determined. I do not see that expert testimony is essential, or can aid to a clear understanding of the prior art shown in the bill, or of the device set forth in the patent, or of the alleged infringing device.

The claims of the patent, four in number, read as follows:

"(1) In a thill-coupling, a draft-eye, a coupling-pin, and a spring to take up the lost motion between the parts, a lever and a link operatively connected to tension the spring, the lever having a transverse aperture enlarged between its ends, and the link having its ends inserted in the aperture and deflected into the enlargement out of alinement with the swinging axis of the link.

"(2) In a thill-coupling of the class described, a lever having an opening therethrough and enlarged intermediate its ends, and a link-bar having its ends inserted in the opening and disposed at an angle with its axis.

"(3) In a thill-coupling of the class described, a lever having an opening therethrough and enlarged intermediate its ends, and a link consisting of a U-shape bar having its extremities deflected inwardly and upwardly from the sides and inserted in the aperture.

"(4) In a thill-coupling of the class described, a lever having a split boss, and a U-shape bar having its ends inserted between the jaws of the boss and bent at an angle other than a right angle with the sides of the bar, the jaws of the boss being closed over said inserted ends for the purpose set forth."

We have in combination a draft-eye and coupling-pin, and a spring to take up the lost motion between the parts; the lever and a link operatively connected to tension the spring, the said lever having a transverse aperture enlarged between its ends, and the link having its ends inserted in the aperture and deflected into the enlargement out of alinement with the swinging axis of the link.

Thill-couplings having a draft-eye and coupling-pin and a spring to take up the lost motion between the parts, with a lever and a link operatively connected to tension the spring, are so old and well known that I think a court is justified in taking judicial notice of their existence. They are as well known as wagons and sleighs. However, the patentee in his specifications says:

"This invention relates to improvements in thill-couplings, in which a link and a lever are operatively connected to tension a spring to hold the draft-

eye in close contact with the coupling-pin, and thereby prevent rattling of the parts."

He then says:

"The link is formed from a single piece of wire or similar material, and its opposite ends are inserted in an aperture in the lever from opposite sides to pivotally connect the two parts together."

This is descriptive of the prior art. The patentee then says:

"Heretofore I have relied upon the tension of the arms of the link to hold the ends in the aperture; but I find that, when subjected to a severe pull or other strains which would tend to separate the ends of the link, said ends would sometimes be drawn from the apertures, and thereby disconnected from the lever."

This tells us how the U-shaped link formed of wire or similar material has in the prior art been connected with the lever, to wit, as shown in the drawings the free ends of the U-shaped link have been bent inwardly towards each other and inserted in the apertures or holes in the lever, made large enough for the insertion thereof. As stated, the tension of the arms of the link would hold these free ends thereof in the aperture or apertures provided for their admission into the lever. Left in this way, it is evident that a severe strain or pull upon the bent or curved end of the link would tend to draw the free ends thereof from the apertures in the lever. A blow or pull side-wise upon one or both of the arms of the link would pull the free ends from the apertures. This might be done accidentally. As pushing the lever into place so that the link would hold and prevent rattling of the thill-coupling entire would bring a severe strain upon the link, the tendency was to pull the free ends of the link from the aperture or apertures. The purpose the patentee had in view was to prevent this, and he says:

"My object, therefore, is to prevent the accidental disconnection of the link from the lever."

What he means is that he purposes to do something to prevent the escape of the free ends of the link from the apertures or aperture in the lever when strain is brought to bear upon the link by pulling or accidentally by blows against the arms of the link which would tend to drive them away from the lever. Such disconnection of the free ends of the link from the lever sometimes occurred, in actual experience, by a blow from a flying stone thrown by the foot of the horse or the wheel of the wagon, and striking inside or between the arms of the link.

The patentee then proceeds to tell us how he forms his link and lever and connects them so as to obviate the difficulty mentioned; that is, how to prevent the free ends of the link from becoming disconnected from the lever by a pull upon the link or pressure in the manner indicated. The lever has two arms, and between these arms the patentee has his aperture for the insertion of the free ends of the link. At the place where he has his aperture he makes the lever solid, and says:

"This aperture is formed in a split boss, 14, and gradually increases in diameter from its outer ends inwardly; but the lever is first formed with the jaws, as 15, of the aperture open, so that the angular ends, 12, may be

readily laid in the opening, after which the jaws are closed together around the extensions, 12, to hold them from withdrawal laterally."

This means, simply, that at the solid portion where the aperture is formed the bent free ends of the link are inserted in the aperture, which aperture is made to increase in size as we go towards the central point between the two arms of the lever from either side thereof, and thus the outer openings are of a size sufficient to admit the ends of the arms of the link, but in its central portion this aperture is considerably larger. To prevent the pulling out of these free bent ends of the link, the patentee now bends such ends again, and the sole and only purpose of this enlargement of this aperture as described is to receive this further or additional bending of the free ends of the link and at the same time permit their free play or movement. Here, in again bending the free ends of the link, and in enlarging the aperture to permit the free play of these bent ends, resides the invention of the patent. This is the improvement over the prior art. This is the new or novel idea disclosing patentable invention, if any there be. Practically, whether the lever is made solid at the point or points where the free ends of the link are inserted or not is immaterial. We may dispense with the split boss and its enlarged aperture entirely, and the result and effectiveness of the device is the same. If we provide at this point two apertures, one in each arm of the lever, having them opposite each other, and insert therein the free ends of the link respectively, and then again bend these free ends at a right angle, or substantially so, in any direction, these free ends will move without obstruction, except that they will not be drawn out of the apertures in the arms of the lever except by the exercise of such force as will straighten the bent ends. The same force would withdraw the free ends of the link from the aperture in the split boss mentioned. The whole idea of this improvement in a thill-coupling was to my mind covered and anticipated by the horseshoer who bent over or "clinched" the end of the horseshoe nail after being driven through the hole in the shoe and the hoof of the horse, such clinching being for the purpose of preventing the nails from pulling out. The same idea is covered in the bent-up free ends of the handle or bail of a water pail where they engage respectively with the ears of such pail on the opposite sides thereof. The ears of the water pail each of which has an aperture, stand perpendicularly and correspond to the two arms of the lever in this thill-coupling. The handle or bail of the pail corresponds to the link of the patent, and is quite similar in shape. The free ends of the handle or bail where they engage with the ears are bent inwardly at nearly a right angle to the arms of the bail or handle, and are inserted in the apertures in the ears. We may now lift the pail, the bent ends of the bail coming into engagement with the ears. If, however, the load is too great, the arms of the bail will spring apart and draw the bent ends out of the apertures in the ears. To remedy this and prevent such disconnection, for generations pailmakers have bent up the extreme ends of the free ends of the handle or bail after insertion in the apertures, so as to form a hook and thus prevent the withdrawal of such free ends from the

ears accidentally or by means of the strain on the handle or bail when the pail was filled.

Carpenters for generations have had and utilized the same idea. In the patent in suit it is simply the bending over at an angle the free ends of this U-shaped link after their insertion in the aperture or apertures so as to prevent their withdrawal therefrom except by the exercise of such force as would rebend such ends. This was no application of an old idea to a new situation to meet a novel exigency. The usual skill of the ordinary mechanic was fully competent to cope with the situation, and, to my mind, there is an utter absence of any mental conception amounting to patentable novelty. The Supreme Court of the United States has many times said that not every improvement amounts to patentable invention. This court has many times had occasion to say that it is frequently difficult to draw the line between mental conception, accompanied by means to make it available, amounting to patentable invention, and the exercise of thought and judgment by the skilled mechanic, which he must always do to meet the exigencies of his trade, and which discloses no patentable invention. Here, however, I find no such difficulty. The complainant's counsel says in his brief:

"To carry out the invention, the lever has a perforation into which the bent ends of the link extend, and this perforation must be intermediately enlarged to permit of the bending of the ends of these extremities, so as to prevent their withdrawal. The invention, therefore, involves two changes from what the inventor had previously done, as expressed in the patent: The deflection or bending of the inturned ends of the link, so as to prevent their withdrawal from the perforation; and the enlargement of the perforation or opening between the sides of the lever, so as to permit of the free play of these bent extremities.

"That this is an improvement over what the inventor had done before seems too obvious for argument. That it attains most beneficial results can perhaps be no better evidenced than by the fact that defendant has adopted it. In articles of this class, where the total selling price is measured in cents and the fraction of a cent may represent the profit, very small advantages are often the life of a business. We believe that complainant should be allowed to show the greater popularity of this form of device, its superiority over what has gone before, and the advantages incident to it in the way of manufacture."

I do not doubt that bending over the ends of the free ends of the link within the apertures made the couplings more efficient and rendered the lever less liable to displacement, but the idea is one that would have occurred to any mechanic skilled in the art. The complainant's counsel assumes that the defendant has adopted the improvement disclosed in the complainant's patent. If we are to rely upon the exhibit, defendant's alleged infringing device, filed with the bill, as the extent of defendant's offending, then defendant does not infringe. The defendant has the two arms to his lever, but it has no solid portion between such arms at the places where the free ends of the link are inserted, and no split boss or equivalent therefor. It has two apertures, one in each arm, and these apertures are opposite each other; but it has no split boss with an aperture therein which gradually increases in diameter from its outer ends inwardly. True, the defendant bends the ends of the free ends of its link to prevent their withdrawal from

the apertures in the two arms, but this it had the right to do without infringing any patent or patented device. In no other respect does it encroach upon the claims of the patent in suit.

In the recent case of Kuhn et al. v. Lock-Stub Check Co., 165 Fed. 445, decided November 16, 1908, the Circuit Court of Appeals in this circuit, citing many cases, held:

"A court may properly declare a patent void on a demurrer to a bill for its infringement, when convinced from an inspection that it cannot be sustained."

In the case in hand, if there be an improvement in the thill-coupling, we have no new result except in degree, and we have no new function performed by the lever or by the link or by the coupling as a whole, or by any part of it. All we have is less liability to detachment of the free ends of the link from the aperture or apertures in the lever, and this is done by so bending the free ends of the link at their extremities as to prevent their escape from the holes in which inserted.

The complainant says he ought to be permitted to show large and increased sales and commercial success as bearing on the question of patentable invention. It is decided by the Supreme Court that commercial success in a close case is oftentimes important and will or may determine the result, but alone it is not sufficient evidence of mental conception amounting to patentable invention to sustain a patent. At best, in improving the prior device, the patentee has resorted to a well-known expedient, that of bending the end of a wire to prevent its being drawn out of a hole into which it has been introduced, making the interior of such hole large enough to permit such bending and the free movement of the bent end therein. The link with its free ends thus bent is probably more efficient in that it will more surely remain in place, but it performs no new or added function, and it produces no new or better result. Its operation is precisely the same it was before. The split boss performs no new or different function, and discloses no patentable invention. The aperture therein is larger at its center than at its ends, so that the turned-up ends of the link will have free play. This split boss between the two arms of the lever acts as a receptacle for these bent ends, but does not keep them in position or aid their operation. The open space between the two arms of the lever, having apertures therein to receive the ends of the link, serve the same purpose, and this is defendant's only construction, so far as appears. I cannot see any possible invention. See generally, 30 Cyc. (title "Patents," III, "Patentability") 828, 829.

The demurrer is sustained, with costs.